Randy J. Harvey, OSB #116714
BASSINGER & HARVEY
PO Box 1309
Sherwood, Oregon 97140
Telephone: 503-822-5340
Facsimile: 503-433-140
randy@bassingerharveylaw.com

Attorneys for Plaintiff
MATTHEW SWANSON

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| MATTHEW SWANSON,<br><br>Plaintiff,<br>and<br><br>CLACKAMAS COUNTY SHERIFF'S OFFICE, a political subdivision of Clackamas County, Oregon; CLACKAMAS COUNTY SHERIFF CRAIG ROBERTS, in his individual capacity; and through the CLACKAMAS COUNTY SHERIFF'S OFFICE; CLACKAMAS COUNTY UNDERSHERIFF MATT ELLINGTON, in his individual capacity; and through the CLACKAMAS COUNTY SHERIFF'S OFFICE,<br><br>Defendants. | Case No. 3:18-cv-00913-AC<br><br>**FIRST AMENDED COMPLAINT**<br><br>(Retaliation; Harassment and Hostile Work Environment; Intentional Infliction of Emotional Distress; and Negligent Infliction of Emotional Distress)<br><br>JURY TRIAL DEMANDED<br><br>CLAIMS NOT SUBJECT TO MANDATORY ARBITRATION<br><br>Claim: $1,660,000.00<br><br>Filing Fee $834 (ORS 21.160(1)(d)) |

Plaintiff alleges:

1.

This action is filed by Plaintiff under ORS 659A.030 for events from February 2015 through January 2018, alleging retaliation for reporting criminal conduct that created a risk to the public, reporting law enforcement officials covering up criminal conduct and falsifying public

records.

2.

This court has jurisdiction over Plaintiff's claims of violation of State Constitutional law claims and Oregon Statutory claims under ORS 659A.et seq.

3.

Venue is proper in Clackamas County because Defendant Clackamas County Sheriff's Office ("CCSO") principal place of business is in Clackamas County, Oregon.

4.

Defendant Sheriff Craig Roberts ("Defendant Roberts") was the elected Sheriff of Clackamas County, Oregon. Defendant Roberts was working under the color of law on behalf of CCSO, an agency of Clackamas County, Oregon (the "County"). Defendant Roberts is a final policy maker for CCSO. Defendant Roberts is sued in his individual capacity for acts done outside the scope of his employment.

5.

At all material times herein, Defendant Undersheriff Matt Ellington ("Defendant Ellington") was serving as the Undersheriff of Clackamas County, Oregon. Defendant Ellington was working under the color of law on behalf of CCSO, an agency of the County. Defendant Ellington is a final policy maker for CCSO. Defendant Ellington is sued in his individual capacity for acts done outside the scope of his employment.

6.

At all material times herein, CCSO is a department within the County. CCSO is a proper party under ORS 659A.200(6). At all material times herein, CCSO employed Defendants Roberts and Ellington. At all material times herein, Defendants Roberts and Ellington were acting pursuant to CCSO's and the County's laws, customs, and/or policies. As the employer of Defendants Roberts and Ellington, CCSO is vicariously liable for all of the torturous and unconstitutional acts and omissions of Defendants Roberts and Ellington committed within the

course and scope of their employment, pursuant to ORS 30.265. CCSO was and is a "Public Employer" under 659A.200(6).

7.

At all material times herein, Plaintiff was a "Public Employee" pursuant to ORS 659A.200(2). Plaintiff also enjoyed the Protections of the Peace Officer Bill of Rights found in ORS 236.360.

8.

Plaintiff delivered an Oregon Tort Claims Notice to CCSO on or about November 17, 2017 and more than thirty days have passed since CCSO received the Tort Claim Notice regarding claims and damages. CCSO has not responded to the Tort Claim Notice.

9.

ORS 659A.203(1)(b)(A) and (B) states, in relevant part, it is an unlawful employment practice for any public employer to:

> Prohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of:
>
> (A) A violation of any federal or state law, rule or regulation by the state, agency or political subdivision;
>
> (B) Mismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the state, agency or political subdivision; or

10.

Defendants acted under the color of the law at all material times here. At times, Defendants Roberts and Ellington, as alleged herein, acted outside of the scope of their employment with CCSO.

11.

Plaintiff is entitled to an award of attorneys' fees and costs, pursuant to ORS 659A.885.

12.

Plaintiff is a veteran of the CCSO, with almost eighteen years of experience as a Full-Time Deputy Sheriff in Oregon as certified by the Department of Public Safety Standards and Training ("DPSST") and has been a sworn peace officer in the state of Oregon for over 20 years.

13.

Plaintiff has served in the following positions: United States Marine, honorably discharged (1993-1997); Police Officer, Sweet Home, Oregon (1998-2000); hired as a deputy with CCSO (May, 2000); selected for CCSO SWAT Team (2002); selected for CCSO field training officer (2003); selected for CCSO drug recognition expert training (2004-2005); promoted to CCSO Detective assigned Homicide and Violent Crimes Unit (2009); promoted to CCSO SWAT Team Assistant Team Leader (2009); promoted to CCSO Sergeant (2011); selected SWAT Sniper Team Leader then Perimeter Team Leader (2011); selected CCSO Detective Sergeant (2012). Plaintiff has also served as the Acting Police Chief for the city of Wilsonville, Oregon; Active Shooter Instructor; Less Lethal Munitions Instructor; Field Training Sergeant; as well as written multiple policies, procedures and made recommendations and proposals to improve the CCSO.

14.

Plaintiff was assigned to supervise the day shift Wilsonville patrol and investigations in February 2015. Upon taking this position, Plaintiff discovered that Detective Jeffrey A. Green ("Det. Green") was likely falsifying his investigation reports and failing to conduct any investigation, or proper investigations into sex crimes committed against women and children and, as a result the statute of limitations had passed on some crimes, some crimes were in danger of the statute of limitations passing, and in some cases, Plaintiff suspected victims of sexual abuse were still living in situations where their abuser had access to them, which was later proven to be correct.

15.

Plaintiff asked Lieutenant Jeff Smith ("Lt. Smith") and Captain James Rhodes ("Cpt. Rhodes") for additional resources to investigate Det. Green's pending cases and for an internal investigation of Det. Green's alleged criminal misconduct. Resources to investigate Det. Green's uninvestigated cases were denied, thereafter Plaintiff assigned patrol officers under his command to follow-up on crucial cases to prevent cases from passing the statute of limitations. Plaintiff requested a detective be assigned to the City of Wilsonville to replace Det. Green and Lt. Smith laughed saying Captain Kevin Poppen would never allow it. Repeated requests by Plaintiff were denied and the position was left vacant for months. Plaintiff requested of Lt. Smith and Cpt. Rhodes that deputies on light duty be assigned to follow-up on Det. Green's uninvestigated cases; these repeated requests were also denied.

16.

Plaintiff discovered that Det. Green had been allowed to continue his inappropriate conduct which had been known by command staff since 2013 and possibly prior to that time. Plaintiff discovered the ranking member of CCSO sent to remediate Det. Green had instead removed work restrictions on Det. Green and left before anyone found out fully the extent of Det. Green's misconduct. The ranking member of CCSO was promoted to an even higher rank.

17.

Plaintiff filed an internal affairs complaint against Det. Green and contacted the Internal Affairs Supervisor, Lieutenant William Behan ("Lt. Behan"), and requested Det. Green be placed on administrative leave. This request was denied. Instead, Plaintiff was approached by Lt. Smith, Lt. Behan and Cpt. Rhodes and asked to alter his complaint and submit it in a manner which would be less easily tracked.

18.

Both Cpt. Rhodes and Lt. Smith, who had previously supervised Det. Green, expressed to Plaintiff the problems surrounding Det. Green would make them look bad. Cpt. Rhodes and Lt. Smith also wanted Plaintiff to aid them in concealing information from Det. Green and the

Union that represented him.

19.

Plaintiff believed Cpt. Rhodes and Lt. Smith's requests were unethical and illegal. Plaintiff told Cpt. Rhodes and Lt. Smith he believed he was being asked to violate the Law Enforcement Code of Ethics and Plaintiff refused to do so. Lt. Smith had given Plaintiff a revised form of Plaintiff's complaint that Lt. Smith wanted Plaintiff to submit. A copy of the revised complaint is attached as Exhibit A and incorporated by this reference.

20.

When Plaintiff refused to change his complaint to comply with Lt. Smith's changed version, Lt. Smith asked Plaintiff to give him back the copy of the complaint Lt. Smith had edited. When Plaintiff refused, Lt. Smith was angry and told Plaintiff his actions were a "dick" move, or "dick" thing to do.

21.

Thereafter, Cpt. Rhodes requested a meeting with Plaintiff behind the Public Works Shop while Plaintiff was on patrol. When Cpt. Rhodes met with Plaintiff in person, Cpt. Rhodes attempted to bully and coerce Plaintiff to cover-up Det. Green's issue and Cpt. Rhodes' involvement in it.

22.

Plaintiff steadfastly refused to change the memorandum outlining Det. Green's misconduct despite Cpt. Rhodes ordering him to do so. Plaintiff believed Cpt. Rhodes's orders to alter the document were unlawful, unethical, and would subject Plaintiff to legal ramifications under the Brady Law that could potentially end Plaintiff's law enforcement career.

23.

Lt. Smith reported to another sergeant that Plaintiff was pointing fingers at Lt. Smith and other(s) for "failure to supervise". This was a false statement made for the purpose of creating animosity toward Plaintiff. The misinformed sergeant accosted Plaintiff and another colleague

for allegedly blaming Det. Green's failure on them. When Plaintiff explained to the sergeant he was misinformed, the sergeant told Plaintiff he had gotten the information from Internal Affairs. Plaintiff was concerned because Internal Affairs is supposed to be confidential, and the information leaked was causing damage to Plaintiff's reputation.

24.

The conduct of Cpt. Rhodes, Lt. Smith and Lt. Behan in Internal Affairs was untrue and done for the specific purpose of putting pressure on Plaintiff to withdraw Plaintiff's complaints and play ball with the command staff to cover-up Det. Green's illegal activities.

25.

Plaintiff reported to Cpt. Rhodes that he had been accosted by a fellow worker regarding information leaked from Internal Affairs. Cpt. Rhodes was dismissive of Plaintiff's concerns and told Plaintiff he would just have to deal with it. The CCSO has a policy specifically prohibiting the conduct which Plaintiff reported to Cpt. Rhodes, but when Plaintiff told Cpt. Rhodes the inappropriate nature of being accosted, Cpt. Rhodes informed him it would be unrealistic for him to stop that kind of conduct.

26.

Cpt. Rhodes then accused Plaintiff of not being objective in the investigation of Det. Green. CCSO's policy at the time prohibited Plaintiff from investigating Det. Green because he was a witness and the person who made the complaint, which is why Plaintiff resisted conducting the investigation as requested by Cpt. Rhodes. After Plaintiff told Cpt. Rhodes he did not trust him, Cpt. Rhodes became angry and told Plaintiff he could not be objective and therefore the complaint would have to be handled by someone else. Cpt. Rhodes contacted a colleague of Plaintiff and issued a veiled threat to Plaintiff for not going along with the program.

27.

Det. Green retired and Defendant Ellington took him to lunch. A retirement party was held for Det. Green on CCSO premises and he was given a retirement badge and Identification

Card as a retired detective. Det. Green was never placed on administrative leave or interviewed regarding the allegations of misconduct.

28.

Defendant Ellington falsely certified to Department of Public Safety Standards and Training ("DPSST") that Det. Green was not involved in any misconduct and was not under investigation when he retired, which was untrue. Accurately reporting Det. Green's separation and being under investigation would have subjected CCSO to scrutiny by DPSST.

29.

Approximately five-months after Det. Green retired, a CCSO detective was tasked with investigating Det. Green's uninvestigated cases and Lt. Smith instructed that the detective conceal the facts that Det. Green had not investigated the case from any victims the detective contacted.

30.

CCSO took intentional actions to minimize Det. Green's actions, to cover-up Det. Green's conduct and to cover-up CCSO's culpability in permitting Det. Green's misconduct to continue for more than a three-year period.

31.

After Plaintiff reported Det. Green's misconduct he was treated in a negative fashion by command staff. Plaintiff received his first ever evaluation during his previous carrier with CCSO rating him poorly. The evaluation contained untrue and inaccurate information provided to the evaluator by Cpt. Rhodes and Lt. Smith. The statements were made in retaliation for Plaintiff's report of Det. Green's misconduct.

32.

Plaintiff challenged Cpt. Rhodes and Lt. Smith about the statements. Cpt. Rhodes and Lt. Smith told Plaintiff that they did not make the alleged statements and Cpt. Rhodes and Lt.

Smith pledged to write clarifying documents and statements disputing the information. Cpt. Rhodes raised the issue of the truthfulness of the person who wrote the evaluation and stated he would be reporting it to Defendant Ellington. CCSO made no efforts to correct the record or determine the veracity of the statements or determine if any ranking member of CCSO was untruthful regarding Plaintiff's evaluation. Untruthfulness being a very serious form of misconduct for a sworn officer.

33

Plaintiff obtained a copy of Defendant Ellington's false declaration to DPSST.

34

Plaintiff reported Defendant Ellington's misconduct to DPSST and was told that DPSST did not investigate these complaints and that Plaintiff would have to report the conduct to Defendant Roberts, which Plaintiff did. At the time Plaintiff reported this information to Defendant Roberts, Plaintiff had already pursued different avenues available to him via the chain of command unsuccessfully. Plaintiff contacted Defendant Roberts to meet with him and report the misconduct of Det. Green and others who covered up Det. Green's misconduct, which included Defendant Ellington. Defendant Roberts scheduled a meeting on February 16, 2016. When Plaintiff arrived for the meeting Defendant Ellington was present with Defendant Roberts. Plaintiff reported the misconduct of Defendant Ellington to Defendant Roberts. Defendant Ellington and Plaintiff told Defendant Roberts that he needed to investigate Defendant Ellington. Plaintiff told Defendant Roberts that he needed to report himself to the DPSST and be judged by DPSST's Ethics Panel. In the meeting, Plaintiff reported to Defendants Roberts and Ellington that he was harassed and retaliated against for pursuing a complaint against Det. Green and that CCSO's office managers attempted to cover it up. On information and belief, this meeting represented at lease the third time that Defendant Roberts and Det. Green's serious misconduct since 2013.

35.

Plaintiff reported to Defendants Roberts and Ellington that Plaintiff had been retaliated against for reporting Det. Green and not participating in covering it up. Plaintiff told Defendants Roberts and Ellington that he was accosted by another employee and that Plaintiff's concerns were not investigated. Thereafter, Plaintiff was passed over for promotion to Lieutenant and received a poor written evaluation containing false information. Sometime thereafter, Plaintiff's false written evaluation disappeared from CCSO's system.

36.

The Wilsonville Station is a satellite of CCSO, away from the main office. CCSO management including Lieutenants and Captains maintain offices at the main headquarters. On information and belief, this access gave Lt. Behan and others the opportunity to smear Plaintiff to subordinates without Plaintiff being able to defend himself against the false statements and innuendo.

37.

More than one year after Plaintiff's Internal Affairs complaint, an outside law enforcement agency was contacted to conduct a "review" of Det. Green. On information and belief, this agency was not told the seriousness of the allegations. The outside agency investigator was approached by two high-ranking members of CCSO who were potentially implicated in case of Det. Green, and these two attempted to influence the outcome of the investigation.

38.

CCSO assigned one of its own investigators to clean up Det. Green's cases prior to contacting the outside agency. That detective was later approached by the District Attorney's Office regarding the criminal case against Det. Green but was instructed by CCSO management not to be fully forthcoming with the District Attorney's Office. That investigator was subsequently offered a promotion to Sergeant which amounts to a quid-pro-quo.

39.

The City of Wilsonville contracts with CCSO for police service (Wilsonville Police Department, "WPD"). Prior to 2017, a CCSO employee suggested senior management with the City, including Assistant City Manager Jeanna Troha and City Manager Bryan Cosgrove, be informed of the allegations against Det. Green, who had essentially been a contract employee of the City of Wilsonville. Then Lt. Smith subsequently implied this had been done, yet when Lieutenant Adam Phillips ("Lt. Phillips") took over, a Chief of WPD stated in front of others that Lt. Smith had "kept the city in the dark about Green." Lt. Phillips stated he was going to inform the city regarding Det. Green. On information and belief, the City of Wilsonville was not truthfully informed about Det. Green's misconduct and did not discover the breadth of the misconduct until news reports surfaced.

40.

Defendants authorized false and misleading press releases minimizing the misconduct of Det. Green and the role of CCSO managers attempts to cover it up. Plaintiff was ordered not to speak to the media and was not able to defend himself or inform the public the truth of the misconduct and criminal conduct of Det. Green and members of CCSO. Plaintiff was told a CCSO policy directed him not to speak to the media which implied if he spoke out, he would be subject to discipline.

41.

In May 2017, Defendant Roberts initiated a meeting with Plaintiff where he personally thanked Plaintiff for bringing Det. Green's misconduct to light and asked Plaintiff to report any harassment or retaliation to Defendant Roberts or Lt. Phillips (who was present in the meeting). Plaintiff told Defendant Roberts that he had already reported retaliation and harassment to Defendant Roberts and Defendant Roberts had yet to do anything about it. Plaintiff reiterated, for the fourth time, the misconduct Det. Green had engaged in and how others had asked Plaintiff to help hide it. As he had stated one year and three months earlier, Defendant Roberts again said he would look into it.

42.

Defendant Roberts appointed Chief Deputy Chris Hoy ("Chief Deputy Hoy") to investigate Plaintiff's charges. However, Chief Deputy Hoy was overheard expressing disdain for the complaint and mocking the investigation he was supposedly conducting on Defendant Roberts' behalf. Plaintiff gave Chief Deputy Hoy information including names of witnesses, who Chief Deputy Hoy did not contact. Chief Deputy Hoy does not have a police or investigative background, and later denied he was conducting an investigation. Chief Deputy Hoy refused to return Plaintiff's calls when Plaintiff tried to give him more information and to check on the status of the investigation.

43.

On information and belief, the "investigation" by Chief Deputy Hoy (who is Defendant Ellington's subordinate) is at least the third time CCSO management, at the direction of Defendant Roberts, has commissioned or conducted an internal investigation of the circumstances of Plaintiff's internal affairs complaint against Det. Green, and alleged investigation of retaliation against Plaintiff. CCSO has never disclosed the results of any of those investigations, no one has been disciplined and the retaliation against Plaintiff continues. None of the witnesses whose names were given to Chief Deputy Hoy were interviewed by Chief Deputy Hoy or contacted for statements.

44.

Plaintiff was informed by County Human Resources they could not protect him as a whistleblower against CCSO.

45.

In July 2017, Plaintiff reported to the District Attorney what he believed was misconduct and untruthfulness on the part of CCSO's command staff; to include Defendant Ellington and Cpt. Smith, who had since been promoted from Lieutenant, despite his mishandling of the Det. Green matter.

46.

Plaintiff was involved in the formation of a grassroots political organization called Police Professionals for Law Enforcement Accountability ("PPLEA"). The goal of PPLEA is to professionalize Oregon law enforcement and pursue greater accountability and training for officers regarding child abuse and sex assault investigations. Plaintiff's protected political speech on these topics has been harassed and mocked by CCSO command staff and by other supervisors and managers at CCSO. This ridicule has occurred on CCSO premises on duty time and the agency has not attempted to stop it.

47.

In 2011, Plaintiff was newly promoted and administering roll call while others were present via a satellite office and video conferencing. A sergeant at the satellite office zoomed in on the breasts of a deputy's mother who was on a ride-a-long with her son. This zooming was immediately apparent to all in the room, because the image of the mother's breasts was displayed on a big screen television. Plaintiff immediately ended the video conference.

48.

Plaintiff contacted the sergeant who operated the video who denied any wrongdoing.

49.

Plaintiff reported the sergeant's behavior to Lt. Behan who was his supervisor at the time.

50.

An investigation conducted by CCSO determined the other sergeant did nothing wrong. Thereafter, the same sergeant retaliated against Plaintiff by deleting his requests for overtime.

51.

Plaintiff confronted the sergeant about deleting his overtime in retaliation for reporting his misconduct. The sergeant was a personal friend of Lt. Behan whom Plaintiff had reported it to. Plaintiff requested that Lt. Behan set up a meeting with the sergeant and Plaintiff to discuss

the issue, Lt. Behan refused.

52.

Thereafter, as a result of Plaintiff's stand against sexual misconduct, several female CCSO employees confided in Plaintiff that CCSO has a misogynistic, patriarchal attitude towards women. Plaintiff committed to them to act in their interest to change the climate.

53.

In 2016, a female employee left her email account open. It was accessed by another employee who sent an email which contained sexual innuendo and painted the female employee as simple and unintelligent. Female employees further reported to Plaintiff this was another example of the agency's culture of sexual harassment and misogyny.

54.

In 2014, a CCSO sergeant was fired after multiple incidents of domestic violence and misconduct towards women. The sergeant was often described as a sexual predator for pursuing sexual relationships with young women.

55.

In the winter/spring of 2016, Plaintiff was present for a video conference roll call where Plaintiff was observed speaking to a female subordinate deputy. A sergeant and others in roll call made a joke about Plaintiff implying he was grooming the female deputy in the same manner as the discharged deputy who had pursued sexual relationships with young women. Plaintiff ended the roll call video conference and later spoke to the other sergeant who apologized for his actions.

56.

Plaintiff reported the incident to his supervisor, Lt. Smith because the roll call was overseen by another CCSO lieutenant who did not intervene. Plaintiff could not bring the issue up directly with that lieutenant because he outranks Plaintiff.

57.

In a May 2016 roll call in which Plaintiff and his subordinates appeared via video conferencing, a CCSO sergeant made an ethnically insensitive joke that Cinco De Mayo was a made-up holiday to sell more beer to Mexicans. As roll call began, a suspect was discussed whose last name was "Hunt" and deputies(s) joked that his brother must be Mike Hunt (my cunt). This offensive reference to female genitalia was repeated loudly multiple times, with female employees present in the immediate area where roll call could be heard. One of Plaintiff's subordinates present is married to a woman of color. Plaintiff felt it was his duty to address the racial jokes and crude references to female genitalia to the supervisors of the call.

58.

Plaintiff contacted the sergeants who had been present at that roll call, and their watch commander, Lt. Phillips who was also present. Plaintiff raised the concerns about the racial and sexual language as inappropriate. Lt. Phillips met with Plaintiff in person, spoke dismissively to him, appeared angry and was very upset that Plaintiff made a complaint about the conduct. Plaintiff asked that another staff member be involved in the discussion and Lt. Phillips refused.

59.

The following day, Plaintiff was confronted by a CCSO sergeant regarding the email he sent about roll call sexual and racial language. The sergeant argued there was nothing wrong with the statements and it didn't need to be controlled. At a following training session yet another sergeant told others that Plaintiff had ruined roll call because he was trying to raise the standard of behavior.

60.

Plaintiff reported retaliation and intimidation by Lt. Phillips to his supervisor, Lt. Smith.

61.

In November 2016, Lt. Phillips replaced Cpt. Smith at the WPD as "Chief of Police." Thereafter, Plaintiff was no longer assigned to act as the "Acting Chief" in Lt. Phillips' absence

or left in charge as has been customary under Cpt. Smith. On information and belief, Lt. Phillips retaliated against Plaintiff for raising the complaint of sexual and racial harassment regarding Lt. Phillips.

62.

In 2017, based on a report by Lt. Phillips, command staff launched an investigation under the direction and approval of Defendant Ellington and now Cpt. Smith, into a supposed complaint by a deputy that Plaintiff had encouraged a deputy to leave the force because CCSO wasn't a good place to work. Plaintiff was notified that he was under investigation for not supporting the department and the statements he had made to the deputy. Plaintiff was directed to not have contact with the deputy whom he periodically supervised which interfered with Plaintiff's ability to do his job.

63.

CCSO did not interview Plaintiff and did not interview potential witnesses that would have exonerated Plaintiff's conduct before disciplining Plaintiff. Initially, Plaintiff was told the deputy complained to command; however, a counter investigation by the Union found that the supposed complaining deputy did not make a complaint. The Union discovered the investigation was initiated by Lt. Phillips as directed and approved by Defendant Ellington.

64.

The supposed investigation is pretext for unlawful discrimination and retaliation by Defendant Ellington, Lt. Phillips and CCSO command staff.

65.

Plaintiff applied for promotion to Lieutenant in 2015 and 2016 and was not considered for any position throughout 2017. CCSO instead promoted sergeants that had prior disciplinary matters or a history of poor supervisory decisions and less experienced than Plaintiff.

66.

Plaintiff spoke to Cpt. Smith about his failure to be promoted as being retaliatory.

Plaintiff was told by Cpt. Smith, in the presence of witnesses, that Plaintiff could never prove retaliation because command could come up with other reasons for not promoting him so Plaintiff couldn't do anything about it, or words to that effect.

67.

While praising Plaintiff in the press as the type of officer he wants his sergeants to be, Defendant Roberts has not promoted Plaintiff to a currently vacant lieutenant positions, which illustrates the disingenuous nature of Defendant Roberts' statements in the press.

68.

Plaintiff has a track record of working well with coworkers and supporting their success.

69.

Defendants have systematically targeted Plaintiff for discrimination, harassment and retaliation as a means of discouraging him and other employees from reporting criminal and other misconduct by CCSO employees, which has a stifling effect on the workforce.

70.

CCSO has failed to take any meaningful steps to respond to the creation of a hostile work environment for females and people of color and has systematically retaliated against Plaintiff for raising complaints about such conduct.

71.

An environment hostile to sexual equality and diversity continues to exist in CCSO as demonstrated by the most recent sexual harassment scandal on the CCSO SWAT team supervised by Cpt. Smith, where SWAT team members were forced to dress as women and spoken to in sexual epithets.

72.

CCSO has developed a lawless environment where criminal and ethical misconduct is covered up and staff members, including Plaintiff, who report such conduct are harassed, ridiculed, intimidated and subject to adverse employment actions to destroy their professional

careers.

73.

After Plaintiff gave a Tort Claim Notice to CCSO, his false negative written evaluation reappeared in CCSO's records, creating an adverse employment action.

**FIRST CLAIM FOR RELIEF**

**(Retaliation – Against CCSO)**

**COUNT 1**

(Retaliation for Whistleblowing Criminal Conduct)

(ORS. 659A.199 *et.seq*)

74.

Plaintiff adopts paragraphs 1 through 73 by reference.

75.

Plaintiff, in good faith, reported criminal conduct by a detective that Plaintiff supervised to his Lieutenant, Captain and head of the Professional Standards Unit (Internal Affairs), and through them to the Undersheriff and Sheriff of CCSO.

76.

After Plaintiff made the report to his superiors, and thereafter, Plaintiff was subjected to ongoing harassment, ridicule, scorn, disciplinary procedures, and loss of promotion to positions for which he was very well qualified.

77.

Supervisors attempted to pressure Plaintiff to change his lawful report of illegal conduct. When Plaintiff refused, he was subjected to harassment, rumors were spread about him among deputies and Defendants acted to discredit and malign Plaintiff's reputation, including leaking confidential Internal Affairs information that placed Plaintiff in a false light among his peers.

78.

As a result of Plaintiff's reporting of unlawful and criminal conduct by CCSO employees, and as a result of Plaintiff blowing the whistle on Defendants' attempts to cover up the mishandling of the employee engaged in criminal conduct, Plaintiff has suffered the loss to his character and reputation by Defendants spreading false reports and rumors about Plaintiff. Plaintiff is entitled to recover damages to his character, reputation and standing as a law enforcement officer according to proof. Plaintiff requests damages in the sum of $1,000,000.00.

79.

Plaintiff's reports of employee's illegal and unethical conduct were made to Defendants Roberts and Ellington and Plaintiff requested protection from Defendant Roberts, which he refused to provide, causing Plaintiff harm to his reputation as a sworn officer. On information and belief, Defendants Roberts and Ellington sought to discredit and discipline Plaintiff as a means of preventing him from continuing to make reports of unlawful and improper conduct.

80.

Plaintiff has been denied assignments he was routinely given in the past including acting as interim Chief at the WPD, participating in SWAT team, and providing training. Plaintiff is entitled to recover economic loss in the sum of $60,000.00.

81.

Plaintiff has been passed over for promotion to Lieutenant and unreasonably been denied promotions since 2015. Plaintiff is entitled to injunctive relief in the form of promotion to Lieutenant and Plaintiff is entitled to recover back compensation according to proof at trial in the sum of $300,000.00.

82.

As a result of Defendants unlawful retaliation for reporting criminal activity by CCSO employees and opposing Defendant Roberts' cover-up of criminal activity, Plaintiff has suffered

emotional distress in an amount to be proven at trial in the sum of $400,000.00.

83.

Plaintiff is entitled to his attorneys' fees and costs pursuant to ORS 659.885 and ORS 20.107.

**COUNT 2**

(Retaliation for Reporting Sexual Harassment-Hostile Environment)

(ORS 659A.199 *et seq*)

84.

Plaintiff adopts paragraphs 74 through 83 by reference.

85.

As previously reported, Plaintiff had an ongoing dispute with Lt. Phillips and Cpt. Smith over use of sexual language, sexual innuendo, racial language and harassment, for which Plaintiff was subjected to ongoing harassment by Lt. Phillips.

86.

Lt. Phillips defended the comments as harmless banter and told Plaintiff he was too sensitive.

87.

Plaintiff explained that such sexually charged comments in the workforce is harmful to the work environment and interferes with the staff's ability to do their job.

88

Thereafter, Plaintiff's supervisor circulated to staff that Plaintiff was overly sensitive and mocked Plaintiff in meetings with other patrol staff.

89.

As a result of Plaintiff's complaints about sexually inappropriate conduct in the workplace, he has been subjected to harassment, ridicule, and loss of promotion.

90.

Plaintiff has suffered the loss of promotions, loss of reputation, and been ridiculed by senior staff at CCSO.

91.

Plaintiff has been denied assignments he was routinely given in the past including acting as interim Chief at the WPD, participating in the SWAT team, and providing training. Plaintiff is entitled to recover economic loss in the sum of $60,000.00.

92.

Plaintiff has been passed over for promotion to Lieutenant and unreasonably been denied promotions since 2015 and is entitled to recover compensation according to proof at trial in the sum of $300,000.00.

93.

As a result of Defendants' unlawful retaliation for reporting criminal activity by CCSO employees and opposing Defendant Roberts' cover-up of criminal activity, Plaintiff has suffered emotional distress in an amount to be proven at trial in the sum of $400,000.00.

94.

Plaintiff is entitled to his attorneys' fees and costs pursuant to ORS 659.885 and ORS 20.107.

**COUNT 3**

(Retaliation for Reporting Unlawful Employment Practices)

(ORS 659A.199 *et.seq.*)

95.

Plaintiff adopts paragraphs 84 through 94 by reference.

96.

Plaintiff was approached by a supervisor and told that he had been charged with suggesting that a deputy should work somewhere else.

97.

Plaintiff was given a negative evaluation as pretext for reporting unlawful criminal conduct by a detective and the cover ups by senior CCSO command staff. The evaluation disappeared from CCSO's records after Plaintiff complained about its falsity.

98.

After Plaintiff filed a tort claim notice, the negative and false written evaluation reappeared in CCSO's records.

99.

Plaintiff was falsely accused of misconduct and was investigated for conversations he allegedly had with a female deputy, which included discussions of illegal conduct by department personnel, wherein Plaintiff was alleged to have encouraged the deputy to work in some other job.

100.

On information and belief, Defendants' actions were directed by Defendants Roberts and Ellington, and the investigation of false allegations was intended to be harassment and a warning to Plaintiff to fall into line and keep his mouth shut.

101.

The investigation was resolved as inconclusive because the alleged misconduct attributed to Plaintiff were false, but Plaintiff was issued a counseling memo anyway for "if" he engaged in misconduct in the future.

102.

On information and belief Defendants' sole purpose was to intimidate and harass Plaintiff for reporting misconduct by senior employees of CCSO and for reporting illegal conduct by a sheriff detective.

103.

Plaintiff has suffered the loss of promotions, loss of reputation, loss of assignments and

has been ridiculed by senior staff at CCSO.

104.

Plaintiff has been denied assignments he was routinely given in the past including acting as interim Chief at WPD, participating in SWAT team, and providing training. Plaintiff is entitled to recover economic loss in the sum of $60,000.00.

105

Plaintiff has been passed over for promotion to Lieutenant and unreasonably been denied promotions since 2015 and is entitled to recover compensation according to proof at trial in the sum of $300,000.00.

106.

As a result of Defendants' unlawful retaliation for reporting criminal activity by CCSO employees and opposing Defendant Roberts' cover-up of criminal activity, Plaintiff has suffered emotional distress in an amount to be proven at trial in the sum of $400,000.00.

107.

Plaintiff is entitled to his attorneys' fees and costs pursuant to ORS 659.885 and ORS 20.107.

**COUNT 4**

(Aiding and Abetting Retaliation for Reporting Illegal Conduct by Defendant Ellington)

(ORS 659A.199 *et.seq.*)

108.

Plaintiff adopts paragraphs 95 through 107 by reference.

109.

Plaintiff reported illegal conduct of a detective under his supervision to his lieutenant, captain and to Defendant Ellington.

110.

Defendant Ellington filed a false declaration with DPSST, falsely stating that the deputy

who committed criminal acts was not under investigation.

111.

Plaintiff filed a public information request with DPSST to obtain a copy of the declaration filed by Defendant Ellington and discovered that Defendant Ellington had lied on the form telling DPSST that Det. Green was not under investigation.

112.

Plaintiff reported the false declaration by Defendant Ellington to Defendant Roberts and scheduled a meeting to discuss it with Defendant Roberts.

113.

When Plaintiff arrived at the meeting, Defendants Roberts and Ellington were both present and when Plaintiff made the complaint to Defendant Roberts about the false swearing of Defendant Ellington, Defendant Roberts minimized Defendant Ellington's illegal conduct.

114.

After Plaintiff's meeting with Defendants Roberts and Ellington, he has been subjected to investigations, false allegations and spreading of false information about him by command staff resulting in a loss of reputation.

115.

On information and belief, the harassment of Plaintiff was directed and encouraged by Defendants Roberts and Ellington.

116.

Plaintiff was told by a captain that he would not be promoted and that they would couch the denial of his promotion in such a manner that he could never prove retaliation.

117.

Subsequent to Plaintiff's report to CCSO and Defendant Roberts of Defendant Ellington's false swearing, he has been passed over for multiple lieutenants' positions for which Plaintiff is highly qualified.

118.

Defendant Ellington has continued to orchestrate retaliation and harassment of Plaintiff through trumped up investigations and orchestrating the spreading of false rumors about Plaintiff in the workplace.

119.

As a result of Defendants' unlawful aiding and abetting retaliation for reporting Defendant Ellington's illegal and inappropriate activities, Plaintiff has suffered emotional distress in an amount to be proven at trial in the sum of $200,000.00.

120.

Plaintiff gives notice of his intent to seek punitive damages against Defendants Roberts and Ellington individually for aiding and abetting retaliation.

121.

Plaintiff is entitled to his attorneys' fees and costs pursuant to ORS 659.885 and ORS 20.107.

**SECOND CLAIM FOR RELIEF**

**(Discrimination, Harassment and Hostile Work Environment)**

(ORS 659A.030 *et.seq*)

122.

Plaintiff adopts paragraphs 108 through 121 by reference.

123.

Plaintiff is a member of a protected class because he has reported unlawful discrimination and unlawful criminal conduct by Defendants under ORS 659A.030.

124.

Defendants have created a hostile environment for Plaintiff which is pervasive and regularly interferes with his ability to do his job.

125.

Plaintiff is highly qualified for his job having received regular promotions up until he reported discrimination and unlawful conduct by CCSO's personnel.

126.

Plaintiff has been subjected to ongoing harassment by supervisors, spreading of rumors and false information about Plaintiff.

127.

Plaintiff has been subjected to sham investigations as pretext for unlawful harassment for engaging in a protected activity.

128.

On information and belief, the harassment and sham investigations are instigated by Defendants Roberts and Ellington for the purpose of denying Plaintiff professional standing, reputation and promotion.

129.

CCSO failed to exercise reasonable care to protect Plaintiff from harassing behavior. Plaintiff's requests for protection were unheeded and instead Defendants intentionally and purposefully spread rumors about Plaintiff, alleged sham charges, conducted sham investigation and intentionally damaged Plaintiff's reputation. Plaintiff is entitled to recover damage to his professional standing, character and reputation in an amount according to proof in the sum of $1,000,000.00.

130.

Plaintiff has been denied assignments he was routinely given in the past including acting as interim Chief at WPD, participating in the SWAT team, and providing training. Plaintiff is entitled to recover economic loss in the sum of $60,000.00.

131.

As a result of Defendants' creation of a work hostile environment, Plaintiff has been passed over for promotion to Lieutenant and unreasonably been denied promotions since

2015. Plaintiff is entitled to recover compensation according to proof at trial in the sum of $300,000.00.

132.

As a result of Defendants' creation of a hostile work environment, Plaintiff has suffered emotional distress in an amount to be proven at trial in the sum of $400,000.00.

**THIRD CLAIM FOR RELIEF**

**(Infliction of Emotional Distress)**

**COUNT 1**

(Intentional and\or Reckless Infliction of Emotional Distress)

133.

Plaintiff adopts paragraphs 122 through 132 by reference.

134.

Defendants Roberts and Ellington were angry with Plaintiff for reporting unlawful conduct by employees and supervisors of CCSO and sought to harm Plaintiff by damaging his reputation and preventing him from being promoted.

135.

Supervisors of Det. Green who pressured Plaintiff to cover-up their failures to address criminal conduct of Det. Green were angry with Plaintiff and sought to harm Plaintiff by damaging his reputation and preventing him from being promoted.

136.

Defendants engaged in an intentional course of conduct to discredit Plaintiff and prevent him from being promoted and to intentionally cause him emotional distress.

137.

Defendants intended and did cause a sham investigation of Plaintiff to harass, discredit and cause Plaintiff emotional harm.

138.

Defendants' conduct exceeded social bounds when they purposed to prevent Plaintiff from disclosing illegal conduct by harassing him and threatening his job through false rumors and sham investigations.

139.

Plaintiff has been denied assignments he was routinely given in the past including acting as interim Chief at the WPD, participating in the SWAT team, and providing training. Plaintiff is entitled to recover lost wages in the sum of $60,000.00.

140.

As a direct and proximate cause of Defendants' actions, Plaintiff has suffered emotional harm including loss of sleep, anxiety, and depression, and Plaintiff requests $400,000.

**COUNT 2**

(Negligent Infliction of Emotional Distress)

141.

Plaintiff adopts paragraphs 133 through 140 by reference.

142.

Defendants operate a dangerous public law enforcement service that is required to uphold the laws of Oregon and the United States.

143.

CCSO is subject to ORS 654.305 which requires that Defendants maintain a safe work environment for its employees.

144.

CCSO has a duty to enforce the laws of Oregon and policies of Clackamas County to protect Plaintiff from injury while employed by CCSO.

145.

CCSO breached its duty to protect Plaintiff from harm as a result of CCSO employees

violating the laws of Oregon and the Policies of Clackamas County by inflicting harm on Plaintiff, and intentionally being encouraged to do so by command staff of CCSO.

146.

CCSO was warned by Plaintiff that he was suffering harm from officials of CCSO and CCSO failed to take adequate steps to protect Plaintiff.

147.

CCSO was aware that Defendants Roberts and Ellington and others were engaging in improper and possibly illegal conduct and engaged an outside entity to investigate possible wrongdoing.

148.

Even with this knowledge, Defendants' failed to protect Plaintiff from harm inflicted intentionally and recklessly by Defendants Roberts and Ellington and others.

149.

As a direct and proximate cause of CCSO's failure to fulfill its duty to maintain a safe environment for employees, Plaintiff suffered severe emotional distress and financial loss.

150.

Plaintiff has been denied assignments he was routinely given in the past including acting as interim Chief at the WPD, participating in the SWAT team, and providing training.

151.

As a direct and proximate cause of Defendants' actions, Plaintiff has suffered emotional harm including loss of sleep, anxiety and depression.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial on all triable claims and issues herein.

WHEREFORE, Plaintiff prays for judgment as follows:

On Plaintiff's First Claim for Relief – Retaliation, Counts 1, 2 and 3, judgment in favor of Plaintiff and against CCSO as follows:

1. Injunctive relief and promotion of Plaintiff to Lieutenant with back pay in the sum of $300,000.00;

2. Compensatory relief for lost wages for denied assignments in the sum of $60,000.00;

3. Emotional distress damages in the sum of $400,000;

4. Compensatory damages for loss to character, reputation and status as a sworn officer in the sum of $1,000,000.00;

5. Pre-judgment and post-judgment interest as allowed by law;

6. Plaintiff's reasonable attorney fees, costs and disbursements;

7. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame;

8. Upon motion, punitive damages against individual Defendants; and

9. Any I other relief court deems just and equitable.

On Plaintiff's First Claim for Relief – Retaliation, Count 4, judgment in favor of Plaintiff and against Defendants Roberts and Ellington, jointly and severally as follows:

1. Emotional distress damages in the sum of $200,000.00; and

2. Plaintiff's reasonable attorney fees and costs.

On Plaintiff's Second Claim for Relief - Discrimination, Harassment and Hostile Work Environment, judgment in favor of Plaintiff and against CCSO for:

1. Injunctive relief and promotion of Plaintiff to Lieutenant with back pay in the sum of $300,000.00;

2. Compensatory relief for lost wages for denied assignments in the sum of $60,000.00;

3. Emotional distress damages in the sum of $400,000.00;

4. Compensatory damages for loss to character, reputation and status as sworn

officer in the sum of $1,000,000.00;

5. Pre-judgment and post-judgment interest as allowed by law;

6. Plaintiff's reasonable attorney fees, costs and disbursements incurred herein;

7. On all claims, as applicable, amounts necessary to offset the income tax consequences of receiving a lump sum payment, rather than receiving a payment of wages over the applicable time frame;

8. Upon motion, punitive damages against individual Defendants; and

9. Any other relief the court deems just and equitable.

On Plaintiff's Third Claim for Relief - Emotional Distress, Counts 1 and 2, judgment in favor of Plaintiff and against CCSO as follows:

1. Compensatory damages in the sum of $400,000.00 for emotional distress;

2. Compensatory damages in the amount of $1,000,000.00 for damage to character, reputation and professional standing; and

3. Any other relief the court deems just and equitable.

DATED this 15 day of June, 2018.

BASSINGER & HARVEY

By: Randy J Harvey

RANDY J. HARVEY, OSB #116714
Of Attorneys for Plaintiff
Trial Attorney: Randy J. Harvey
randy@bassingerharveylaw.com